HARRIS (HOWLAND v.). See Case No. 6,-794.

HARRIS (JOHNSON v.). See Cases Nos. 7,-387 and 7,388.

HARRIS (KEENE v.). See Case No. 7,642.

---

## Case No. 6,122.
### HARRIS v. The KENSINGTON.
[8 Am. Law Reg. 144.]

District Court, South Carolina.[1] Jan., 1860.

MARITIME LIEN—WHEN IT ARISES—WHEN EXTINGUISHED.

1. It is a conceded proposition that, under the general maritime law, a lien arises or is implied for the benefit of material-men, unless the ship be in her home port, or credit be to the master or owner.

[Cited in Durham v. The Eclipse, Case No. 4,-268.]

2. Where a lien arises under the maritime law, for the benefit of a material-man, it is not waived or lost because a negotiable note between the parties to the original contract has been taken by the creditor, unless such note was taken as payment; but if the party taking the note makes an absolute transfer of it, the lien is thereby extinguished; hence, where A advanced money for a vessel's supplies and repairs in a foreign port, and the master drew a draft on the owner, which was accepted, but which subsequently came into the libellant's possession and control, and was brought into court to be cancelled, it was held that the lien was not extinguished.

[Cited in The R. W. Skillinger, Case No. 12,-181. Questioned in The Napoleon, Id. 10,-011. Cited in The Sarah J. Weed, Id. 12,-350.]

3. The cases fully cited and commented on.

In admiralty. Libel in rem [by George Harris against the schooner Kensington] for money advanced for repairs and supplies.

MAGRATH, District Judge. The principal, if not the only question in this case is, how far a material-man waives or affects his lien for repairs or supplies under the general maritime law, by taking from the owner or captain a negotiable security. As yet no decision of a court of supreme and controlling authority can be cited; although judges of

---

[1] [District not given.]

great repute have expressed an opinion. That opinion is, of course, to be weighed, whether it leads to a conclusion which affirms or rejects the proposition; for each tribunal is responsible for the correctness of its judgment; and not at liberty, perhaps to rest upon the mere weight of authority. Especially is this so when a reasonable doubt forbids hearty acquiescence. To the proposition that under the general maritime law, according to the rule of the civil law, a lien arises or is implied for the benefit of the material-man, there is no exception; and the rule is equally well established, that he who advances money with which the material-man is paid, is also entitled to a lien similar to that which the material-man would have had. In the United States, the lien is not allowed in the home port of the vessel, because it is the port at or near which the owner resides; and upon him the creditor has redress by his remedy in personam. It is equally well settled that this lien of the maritime law is superceded by a personal credit given to the owner or master. But the precise nature of this personal credit, how its proof is to be made; and whether, in the case of a negotiable instrument, that proof is supplied or presumed from the mere existence of the paper; are questions of embarrassment and doubt, a partial solution of which is necessary in this case.

It has been held that whatever makes the repairs or supplies a special contract excludes the lien. Bull. N. P. 45. But still the question recurs, what is meant by a special contract? At one time, if the price was named, the lien was excluded. But that doctrine could not be maintained, and is now rejected. Hutton v. Bragg, 7 Taunt. 14. In Stevenson v. Blakelock, 1 Maule & S. 535, an express antecedent contract was held to exclude an implied contract, and with that, the lien which grew out of it. In Ex parte Lewis [Case No. 8,310], a personal contract for a specific sum discharged the implied lien. In The Nestor [Id. 10,126], it was held that in cases of repairs or supplies to a vessel in a foreign port, in addition to the maritime lien, there is an obligation upon the owner and master cumulative to the remedy of the lien. In Murray v. Lazarus [Id. 9,962], a bill of exchange was held as the substitution for the lien which otherwise would have been created; while a recent commentator inclines to the opinion that if the bill or note is that of the master or owner, such would not be the proper conclusion (Fland. Mar. Law, 193); and Judge Betts, insists upon a qualification still broader (The Active [Case No. 34]). At the common law, possession is essential to the lien, and possession excludes the idea of credit; because credit is inconsistent with a continuing possession of the creditor, and without that possession there is no lien. In a question of lien at the common law, if credit is proved as a part of the contract, the lien by the same proof is displaced; the credit and the lien being inconsistent. In all cases, therefore, where the decision is to be made by the rule of the common law, an easy and practical test is supplied.

But it is prolific of confusion to attempt a reconcilement of the rule which applies to the lien at common law with that of the general maritime law. In the one, to lose possession is to destroy the lien; in the other, the purpose of the lien is to allow the owner to have possession; that by it he may derive benefit from the labor which the material-man has bestowed, in being enabled to prosecute his voyage and secure his profits. In the one possession is its essence; in the other it is not a necessary, or even proper quality. In the one, possession is consistent; in the other, inconsistent with the lien. It is obvious how inapplicable to the consideration of a maritime lien are cases deciding questions under the lien of the common law.

In the case before me the lien is implied—created by law—existing independently of contract or agreement as necessary for its support. It is prima facie the security which the law presumes one party intended to give, and the other to take. It survives without possession, or other act sustaining it, until discharged by payment, lost by neglect, or waived by a special contract which excludes it. So high is it held that it will not be affected by the owner's act which creates a forfeiture; takes precedence of a sale to a bona fide purchaser without notice; and is not postponed to a debt to the United States. It is created and supported by the consideration of its indispensable necessity; and is, therefore, not lightly superseded or destroyed by courts, in which its enforcement in proper cases is asked. It must be borne in mind in the consideration of this and cognate questions, that the judgment of courts in Great Britain rested upon a basis not admitted here to be true or just. Who will reconcile the law in questions of this kind as laid down by Lord Coke or Lord Holt, with the more recent legislation of the parliament of Great Britain? And how can we regard as rules for our guidance, decisions founded upon a jealousy no longer tolerated; and intended to subvert a jurisdiction created by the constitution of the United States? In the consideration of a maritime lien in this court we should search for the rule of the maritime law; or for the special legislation of the United States, if it has modified or changed the rule; for the maritime law is the common law of the commercial world; and to nations in their commercial relations, is what its common law statutes or customs are to each. Starting from this point we will find that the lien claimed here is the security which the maritime law implies in the case of those who, in contracts like this, occupy the relation of debtor and creditor. If the lien does not arise it is because it has been waived, lost, or paid. It may be

waived by agreement; as an arrangement for a mode of payment inconsistent with it; or when an exclusive and special credit is given to the owner or master, or both. It must, however, be a special credit; for in cases where the lien exists, there is a liability of the master and owner, auxiliary and cumulative to it. The difficulty of deciding whether there has been a personal credit excluding the lien is the same which we meet in the civil law in the application of the doctrine of novations; in equity in considering the substitution of securities; and at law in deciding how far one contract operates as a suspension of or substitution for another. It is a question of evidence.

We have seen that a bill of exchange drawn by the captain and accepted by the owner, if taken by the creditor, has been held a waiver of the implied lien. Murray v. Lazarus [supra]. Because, it is said, a right to detain for the future event of the bill is inconsistent with the bill. But the reason would be stronger if the bill was per se payment, or if the credit involved in the time for which the bill was drawn was inconsistent with the lien. If the bill is not per se payment, and if the time allowed for its payment is consistent with the lien, the conclusion that its mere existence is proof of waiver, is in the case of a maritime lien perhaps hastily made. The Albatross [Case No. 13,645]. The acceptance of a bill thereby establishing a credit, may be conclusive as to the extinguishment of a lien at the common law; though even in that case I express no opinion; but it is far from conclusive in the case of a maritime lien. In The Nestor [Case No. 10,126], Judge Story considers at great length the nature of the maritime lien, and the modes in which it may be waived or lost. He holds that supplies or repairs in a foreign port are taken, as prima facie furnished on the credit of the ship and owners until the contrary is proved. But that taking a negotiable promissory note implies a waiver of the lien, because the lien may be in the hands of one person and the note in the possession of another. Whatever might be the effect of such a rule, if it were operative as a presumption of law, it is to me quite clear that it cannot be supported for the reason now given. It is admitted in the same case that a continuing liability of the owner and master is not inconsistent with the lien, because they all by law arise at the same time from the same contract. The promissory note is the admission of a liability; and in itself adds nothing to what the law intends; and the promise to pay is no more than the law implies from the liability it has imposed. In fact, therefore, to use the language of Lord Eldon, "the contract for payment for money is itself, in a sense, a security full as good as a note." 15 Ves. 346. That the creditor cannot pursue his remedy while the note is maturing is in effect a credit, but that is not inconsistent with the maritime lien. How far, in any case, a promissory note or bill of exchange supercedes a former contract, is not a rule of law, but results from the agreement of the parties. If then, taking a bill or note is in no respect inconsistent with a maritime lien, it cannot become so because of the allegation that the note may be in the hands of one person and the lien be claimed by another. If that consequence could result in any case, the objection made would have weight in that case, supposing it possible that the lien survives after the transfer of the debt. But it cannot have weight in a case where the note or bill and the lien continue in the hands of the same person to whom they were originally given. Such would be the conclusion in a court of law. 2 Speer, Law, 448; 1 Rich. Law, 228; 2 Rich. Law, 244; 8 Cow. 77; 2 Story, Eq. Jur. p. 474. And such, of course, must be the conclusion in this court, from which we look not only to the court of equity for guidance in certain cases, but to the civil law so far as we can adopt it. I readily concede that the apprehension of damage sometimes leads to the adoption of an arbitrary rule, which may in its operation even embrace cases in which there is no room for that apprehension. But in such cases the rule is positive; and in law a rule which is positive in the construction of rights and liabilities cannot be oppressive. If a bond is taken in settlement of a pre-existing simple contract debt, it extinguishes that debt. This is a presumption, and its general operation is fixed; but evidence may control it, and the security of the bond become cumulative. 2 Rich. Law, 608. If the pre-existing contract is asserted as discharged by a negotiable instrument, and if it is so held, it is not because of a rule of law, but from evidence showing that to have been the agreement of the parties. In Ramsay v. Allegre, 12 Wheat. [25 U. S.] 611, the supreme court declined to lay down the rule, although it may be inferred what it would have been if the case had rendered a judgment necessary.

In determining from circumstances, as distinguished from evidence establishing an agreement, how far from them a certain consequence will result, affecting another matter; the nature of the thing to be affected is of much consideration. A greater security merges a lesser; and in securities of equal rank there is room for an easy acquiescence in the conclusion that the latter was intended as a substitute for the former. But the presumption that a higher security was intended to be extinguished by one of less value calls for evidence of the intention of the parties to support it. It is well then, for us to understand the value and nature of this lien or security, and the general principles which are applicable in cases of the substitution of one debt for another. It has been said that the term "lien," used in the sense we have been considering, is technical-

ly incorrect; that lien properly only applies to the security at common law, with its incidents, as we have seen them; and that its qualities are not such as are held by it in common with the maritime lien. That the privilegium of the civil law is more closely connected with the maritime lien; and is "the right which the nature of his credit gives him, (the creditor) and which makes him preferred over other creditors, even those who are inferior in point of time, and have mortgages." Dom. Civ. Law. This priority extends either to all the goods of the debtor, or only to certain things. Among creditors entitled to the privilege in the same degree, (for there are different degrees and qualities of privilege) debts will be paid in the same order, and in like proportions, without regard to the time when they were made. "All privileges make a particular appropriation which gives to the creditor who is privileged, the thing for his pledge; although there be neither covenant nor condemnation which expressly mentions the preference." Dom. Civ. Law, pt. 1, bk. 3, p. 692. Whatever may be this security, privilege or pledge; a jus in re, or jus ad rem; it is enough that when it arises there is a preference in the order of payment; and if the creditor has not the right of a pawnee to sell, or of a lien creditor at common law to retain possession, this court, in both respects, will exercise the power for him. The source, too, of this security, exhibits its nature, and the cause of the respect paid to it. In the same manner in which we have derived from the civil law, the original, so to speak of this security; if, indeed, we are not indebted to that code for the security itself; we must recur to the same code for the principles which are the foundation of the rules which guide us in the substitution of one security for another. In that code this was termed a "novation"; and was effected either by a change of the obligation, or the substitution of one debtor for another: the new debtor being substituted in the original obligation, or making a new covenant. The latter mode was also called a "delegation," but both were comprehended under the title of "novation." The bare effect of a second obligation was not sufficient to produce a novation, unless it appeared that it was so intended; otherwise both would subsist. But mere changes in an obligation, as adding to it new security; or taking part of what it had; lengthening or shortening the time of payment; would not make a novation, because they would not operate to extinguish the first debt, unless it is expressly said, it shall be null. Dom. Civ. Law. The principle of the novation is familiar in equity under a different term, and also at the common law. But while not discarding the aid which we derive from the consideration which a court of law gives to this question, it is rather to the rule as adopted in equity, and to that of the civil law, so far as it is applicable, that we must refer for our guidance in cases like this. In a work of general authority it is said: "Taking of a security has been deemed at most, as no more than a presumption, under some circumstances, of an intentional waiver of the lien; and not as conclusive of the waiver." 2 Story, Eq. Jur. § 1226. "Even the taking of a distinct and independent security, as for instance, of a mortgage on another estate, * * * has been deemed not conclusive evidence that the lien is waived. Taking of bills of exchange drawn on and accepted by a third person, or by the purchaser and a third person, has also been deemed not to be a waiver of the lien, but only a mode of payment." Id.; U. S. v. Lyman [Case No. 15,647]. But the doctrine thus laid down by Judge Story is by him modified in Gilman v. Brown [Id. 5,441]; and still more in its application to maritime securities in The Nestor [supra]. The decision in The Chusan [Case No. 2,717], was rested upon the lex loci contractus. Of these cases it may be said, that while the case of Gilman v. Brown [supra], carried the rule of a waiver of the lien as far as the furthest doubt which had been expressed; the greater extension of it in The Nestor is without any other authority than that of the distinguished judge by whom it was announced. In Gilman v. Brown, Judge Story said: "There is pretty strong, if not decisive, current of authority to lead us to the conclusion, that merely taking the bond or note of the vendee himself for the purchase money will not repel the lien." "But where a distinct and independent security is taken, either of property or responsibility of third persons, it certainly admits of a very different consideration." The waiver, then, as insisted upon by Judge Story, is wholly dependent upon taking a new, distinct and independent security of person or property. It must be distinct; and additional to that which the lien would afford. It may be a new person whose obligation is taken, or additional property made subject to mortgage, to secure the debt. When it is claimed that with no new parties, and without any additional security, an implication arises of the waiver of the lien, it must depend upon the circumstances of the case, as proving either a declaration plain, or manifest intention not to rely longer upon the lien. Mackreth v. Symmons, 15 Ves. 329. Nor will the addition of a new person in all cases discharge the original lien. In Grant v. Mills, 2 Ves. & B. 309, the master of the rolls held that the acceptance of the party upon whom the bill was drawn, was not the addition of a new party, and with it a new security; for the acceptor was not a surety, but considered as a person paying the bill out of the drawer's funds in his hands; and, therefore, that the bill of exchange was only a mode of payment, and not a security. 4 Kent, Comm. 58, and cases cited.

In The Volunteer [Case No. 16,991], Judge Story, in a case where a lien was claimed for freight, and denied because said to have been waived by a charter-party; held that unless there was a stipulation incompatible with the lien, it would attach. Such a test is practicable, and in its operation, just. If applied in this case, it will be seen how the rule laid down in The Nestor, and that also, in Murray v. Lazarus, is untenable. What I have said in relation to the latter case I may repeat as equally applicable to the former; that to make the rule as laid down true, the note or bill must be in itself payment; which it is not; or, because the note or bill operates as a distinct and independent security; which it is not when made between parties to the original contract, and without an agreement making it such; or, because it is inconsistent or incompatible with the original lien, which it is not. None of these consequences are involved in the making of a note or bill; and this is sufficiently proved by the construction given to one of the securities, and which is equally applicable to both; that it is a mode of payment, unless by agreement taken as payment. Lyman v. Bank of U. S., 12 How. [53 U. S.] 225. Raymond v. The Ellen Stewart [Case No. 11,594]. Where the note or bill is transferred to a third person, and becomes his property, the rule may be otherwise than as I have now stated it. But even in that case, the objection that the note might be in the hands of one person and the lien in that of another, could not be supported; because the creditor who had parted with the note could have no claim to retain the lien. If, after the note or bill was transferred the lien continued to exist, it could only continue for the benefit of the person who held the debt; but it could not exist for him, as Judge Story, upon the authority of Emerigon, holds that the lien cannot be transferred. And, as the right to the lien arose from the right to the debt, and could not exist longer than the debt, nor be claimed by the creditor except for the debt; whatever deprived him of the right to the debt would seem also naturally to deprive him of the right to the lien. And if the lien cannot be retained by the creditor because he cannot claim the debt; nor by him to whom the debt is transferred, because the lien cannot be transferred; it would be extinguished by the transfer of the debt; and the difficulty suggested as the reason for the rule cannot prevail, because it cannot and could not arise. This view, however, is in opposition to the opinion of Judge Betts in The Active [Id. 34]. In that case the material-man took the note of the agent of the ship, in payment of supplies. The note was not paid, and the libel was filed to establish the lien: the note being in court and offered for cancellation. Judge Betts held, that the note was not payment, unless agreed to be taken as such: that if not so taken, the lien was suspended during the circulation of the note; and the lien was restored when the note came back to the original holder. But I am not prepared to carry the doctrine to the extent thus laid down. I concede the rule to be, that a note or bill is not payment, unless it has been so agreed. The conduct of the parties may supply the place of; indeed may constitute the agreement. If the party taking a bill or note, uses it as money, by putting it in circulation: giving it the place of money: and making it discharge all the functions which so much paper money would have done, I cannot see in what manner the note or bill was held or treated differently from money. 4 Rich. Law, 59. Is not that use so made of the bill or note, using Lord Eldon's language again, "declaration plain," and "manifest intention," "of a purpose to rely, not any longer upon the estate, (in this case the security,) but upon the personal credit of the individual?" But if this be so, I am less able to agree with the second proposition of Judge Betts, that if the lien is divested, it can be revived without a special agreement. I cannot consider the lien suspended, when the debt is transferred. I have shown that it is divested and extinguished by that act. It cannot be contended that the endorsement is a temporary transfer, for it is an assignment of the debt, with the credit of the endorser as security. In Harris v. Johnston, 3 Cranch [7 U. S.] 311, in treating of the operation of a note conditionally received, the court said, "The endorsement of a note passes the property in it to another, and is the evidence that it was sold for a valuable consideration." The lien, if it did survive, would have to operate to secure the endorser or drawer in the case of a bill, against the non-payment of the maker or acceptor. But such is not the debt which the lien was implied to receive; and if the debt were not of itself privileged, it could not be made such by the effect of a covenant. Dom. Civ. Law, pt. 1, bk. 3, § 5. I am not satisfied that it was ever intended, or can be within the scope of this peculiar security or lien, that it should be invested with the qualities of assignability, or negotiability, which belong to other commercial securities. It was for the protection of the material-man, by securing to him his debt. All the purposes of commerce are answered, and have been, by considering it as operative to this extent. And while I do not see good, I apprehend evil in carrying it farther. It would be impossible to preserve it in the sense of the maritime law, and continue it in a state of suspension, while the debt, to secure which it had been made, had been converted into a negotiable instrument, and passed from the original creditor to some other person as his property. This security, as we have seen, is held in peculiar favor, and entitled to great preference. To allow it to be suspended for the material-man, during the time when a note or bill is maturing in the hands of a third person who held it

as owner, would open a door to the greatest fraud. The evils of such a doctrine pressed upon the learned judge, when he admits that a bona fide purchaser without notice, during the time of suspension of the lien, might be protected in his purchase. Such an admission is unavoidable, when we remember that the tendency of courts, and of legislative bodies, is to discountenance secret liens, because of the opportunities they furnish for the commission of fraud. But the admission is also conclusive of the matter which I am now considering. For, if the security or lien may be postponed to a bona fide purchaser without notice, then it is not that peculiar security which the maritime law affords; and the existence of which is inseparable from the precedence which belongs to it. It is something essentially different. But if it is not this security of the maritime law, it must be, if it is at all, created by the local law of the state, or by agreement of the parties. To neither of these can it be referred; and thus the conclusion seems unavoidable that the concession which must be made as to its effect, when suspended, shows that what is called its suspension is in fact its extinguishment. Such is the rule in the French law. "C'est un principe certain que, quand la causse du privilege cesse, le privilege cesse aussi. Le privilege accordé sur certain chose est de droit etroit, et il droit être plutôt restreint, lors principalement qu'il peut faire prejudice a quel qu'un." Boulay-Paty, tom. 1, 159.

It seems to me the result of cases directly adjudged; and of such others as afford us a basis of deduction; that where a lien arises under the maritime law, for the benefit of a material-man, it is not waived or lost because a note or bill between the parties to the original contract has been taken by the creditor (The Hilarity [Case No. 6,480]); unless there is some evidence showing that the note or bill was taken as payment. But if the party taking the note or bill transfers it to another for a consideration, so that it becomes the property of that person; and thereby loses all right to the note or bill; the implied lien of the maritime law does not follow the debt which has been transferred: while the original creditor by the transfer of the debt, has ceased to have a right to the lien, which is created only for his benefit. That thus, by the transfer, assumed to be absolute, the lien is extinguished; nor will it be revived by taking back the note. An agreement made, may give a new lien; but the implied lien of the law is discharged.

The facts of the case to which this opinion is to be made applicable, are few and plain. The libellant advanced money for repairs and supplies to a vessel in a foreign port. That the advance was made is proved by the draft or bill of exchange which the captain drew on his owner: that it was recognized as proper by the owner, is proved by his acceptance of the draft. The William

& Emmeline [Case No. 17,687]. I have said, that merely taking this draft was not a waiver of the lien. The libel avers that it has been the property of the libellant, and subject to his control; and he now brings it into court to be cancelled; delivered to the owner, or otherwise disposed of as the court shall direct. It seems to me that the libellant is entitled to the relief he seeks. The decree will be entered that the draft or bill of exchange be deposited with the clerk, to be delivered to the owner who is the acceptor; and that the vessel be condemned and sold to pay the libellant the amount of his advances, with interest and costs.